**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

MICHAEL L. SPRIGGS                                              CIVIL ACTION

VERSUS                                                                     18-726-SDD-RLB

HANCOCK WHITNEY CORPORATION

**RULING**

This matter is before the Court on the cross *Motions for Summary Judgment*[1] filed by Plaintiff, Michael Spriggs ("Spriggs"), and Defendant, Hancock Whitney Corporation ("Hancock"). Hancock filed an *Opposition*[2] to Spriggs' *Motion for Summary Judgment*. Spriggs has also filed an *Opposition*[3] to Hancock's *Motion for Summary Judgment*, to which Hancock has filed a *Reply*.[4] For the following reasons, the Court finds that Hancock's *Motion for Summary Judgment*[5] shall be GRANTED, and *Spriggs' Motion for Summary Judgment*[6] shall be DENIED.

**I.     BACKGROUND**

Plaintiff brings this unpaid wage claim against Hancock under the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631 and La. R.S. 23:632. Spriggs worked for Harrison Finance Company from March 23, 2006, to March 9, 2018.[7] Harrison Finance Company

---

[1] Rec. Doc. 11; Rec. Doc. 13.
[2] Rec. Doc. 17.
[3] Rec. Doc. 18.
[4] Rec. Doc. 21.
[5] Rec. Doc. 13.
[6] Rec. Doc. 11.
[7] Rec. Doc. 13-1, ¶ 1.
56997

was owned by Defendant Hancock's banking subsidiary, Whitney Bank.[8] Whitney Bank sold Harrison Finance Company to First Tower Finance Company, LLC, on March 9, 2018, and, on that date, informed Spriggs that his employment would no longer be associated with Hancock.[9] During Spriggs' employment with Hancock's subsidiary, Harrison Finance Company, Hancock offered Spriggs employment benefits including Vacation and Sick leave.[10]

This dispute arises out of the discharge of Spriggs' employment with Harrison Finance. Spriggs alleges that, at the time that his employment terminated with Hancock, Hancock failed to pay him his accrued leave and vacation pay as required by law.[11] Spriggs alleges that he is entitled to be paid for 1,020 hours of Accrued Leave and 144 hours of Vacation, ninety days of wages at his daily rate of pay, as well as attorney fees.

Hancock argues that Spriggs has already been paid for all earned, but unused Vacation pay. Additionally, Hancock contends that there is no statutory authority that requires Hancock to pay Spriggs the cash value of his unused Sick Leave, and Spriggs cannot point to a policy or procedure requiring them to do so. Hancock argues that its policies expressly provide that unused Sick Leave is not payable upon termination of employment.[12]

---

[8] Rec. Doc. 13-1, ¶ 1; Rec. Doc. 11-1, ¶ 1; Rec. Doc. 11-3 (Declaration of Michael L. Spriggs).
[9] Rec. Doc. 13-3, ¶ 4 (Affidavit of Steven Smith, Director of Total Rewards for Hancock Whitney Bank); Rec. Doc. 11-1, ¶ 7 (Plaintiff's Statement of Undisputed Material Facts).
[10] Rec. Doc. 13-1, ¶ 2; Rec. Doc. 13-3, ¶ 3.
[11] Rec. Doc. 11-1, p. 2.
[12] Rec. Doc. 17, pp. 1-2.

56997

## II. LAW AND ANALYSIS

### A. Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[14] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[15] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[16] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[17]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[18] All reasonable factual inferences are drawn in favor of the nonmoving party.[19] However, "[t]he Court has no

---

[13] Fed. R. Civ. P. 56(a).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[15] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F. Supp .2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc).
[16] *Rivera v. Houston Indep. School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[17] *Willis v. Roche Biomedical Lab, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[19] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[20] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.'"[21]

### B.  The Louisiana Wage Payment Act

The LWPA is designed to compel prompt payment of earned wages upon an employee's discharge or resignation.[22] The LWPA provides in part:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first. [23]

To state a claim under the LWPA, the employee must allege "i) that [the defendant] was her employer, ii) that the employee/employer relationship ceased to exist, iii) that at the time that the employee/employer relationship ended she was owed wages, and iv) that [the defendant] failed to submit the owed wages within the statutorily mandated 15 days."[24]

---

[20] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[21] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[22] *Slaughter v. Board of Supervisors of Southern University and Agricultural and Mechanical College*, 2010-1049 (La. App. 1 Cir. 8/2/11); 76 So.3d 438, 446.
[23] La. R.S. 23:631(A)(1)(a).
[24] *Bergeron v. Ochsner Health System*, 2017 WL 3648451 (E.D. La. Aug. 24, 2017) (*citing Dillon v. Toys R Us-Delaware Corp.,* No. 2016-0983, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017)).
56997

*1. Sick Leave and Accrued Leave*

At the outset, the parties dispute whether Spriggs was an employee of Hancock. Hancock does not deny that Spriggs worked for its subsidiary but argues that Hancock was not Spriggs' employer under the LWPA.[25] Louisiana courts consider a variety of factors in determining whether there is an employee-employer relationship under the LWPA:

> (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.[26]

Hancock does not brief the LWPA employment factors but contends that Spriggs was an employee of Harrison Finance "not its indirect parent [company] Hancock …".[27] For his part, Spriggs also fails to address any of the LWPA employment factors but argues that "Hancock promoted Mr. Spriggs to Senior Vice President of Hancock effective October 1, 2017, and paid him a bonus in the amount of $3,250 in connection with this promotion" to support his contention that he was an employee of Hancock. It is undisputed that Harrison was a subsidiary of Hancock, and Hancock paid Spriggs' promotion bonus as well as offered the benefits at issue in this case. Despite the lack of briefing on this issue, the Court finds that, although there may be a genuine issue of fact regarding who was

---

[25] Rec. Doc. 17, p. 5.
[26] *Mendoza v. Essential Quality Const., Inc.*, 691 F. Supp. 2d 680, 686 (E.D. La. 2010).
[27] Rec. Doc. 17, p. 6.

56997

Spriggs' statutory employer, this fact is not material because, regardless of Spriggs' employer, it is undisputed that Hancock offered Spriggs the Vacation and Sick leave at issue in this case, and it is Hancock's handbook which delineates the leave policies.

Spriggs contends that "Hancock has failed to pay Mr. Spriggs his accrued leave and vacation pay as required by law upon the discharge of his employment with Hancock."[28] Spriggs argues that his 1,020 hours of Accrued Leave was an "amount then due under the terms of employment."[29] The record demonstrates, and Hancock does not deny, that Spriggs had a "Current Balance" of 1,020 hours of "Accrued Leave" as of March 9, 2018.[30] According to Hancock, however, "Accrued Leave is nothing more than a subcategory of Sick Leave."[31] As to Sick Leave, Hancock contends that "there is no policy or procedure or a statutory or jurisprudential authority that requires Hancock to pay Spriggs the cash value of unused Sick Leave at the termination of his employment."[32] In fact, Hancock argues that "Hancock's policy expressly provides that Sick Leave has no cash value and is not paid out at termination of employment."[33]

The record demonstrates that Hancock had an express policy that employees are not entitled to payment for unused Sick Leave upon termination and that "Accrued Leave" is a subcategory of Sick Leave. Although Spriggs contends that Hancock "did not have a clear, written policy establishing that the accrued leave was nothing more than a mere

---

[28] Rec. Doc. 11-2, p. 2.
[29] *Id.*
[30] Rec. Doc. 11-7, p. 1.
[31] Rec. Doc. 17, p. 8.
[32] *Id.* at 1-2.
[33] *Id.*

56997

gratuity and was not to be considered an amount due or a wage,"[34] Hancock's policy handbook explains Accrued Leave and its relationship to Sick Leave as follows:

> As of January 1, 2018, eligible Associates with an accrued, but unused Sick Leave balance at close of business on December 31, 2017 will have these hours credited to an Accrued Leave balance. This balance is non-accruing, and no additional hours will be added to it. Sick Leave balances subsequent to close of business of December 31, 2017 will not be credited to an Associate's Accrued Leave balance. Accrued Leave balances will not roll over to the following year until exhausted.
>
> Accrued leave may be used for purposes consistent with Sick Leave. Accrued Leave balances must be used prior to receiving Short Term Disability pay for eligible leaves.
>
> **The Sick Leave policy and eligibility applies to this balance**. Associates hired on or after January 1, 2018 and Commissioned Associates are not eligible for Accrued Leave.[35]

Further, the uncontroverted affidavit of Steven Smith, the Director of Total Rewards for Hancock Whitney Bank who oversees the implementation of benefits that Hancock offers to associates, explains that:

> Prior to January 1, 2018, unused balances of Sick Leave could be rolled over from year to year. Effective as of January 1, 2018, the policy was revised such that an unused Sick Leave could not be rolled over into the next calendar year. Instead of eliminating any unused balances of Sick Leave that an eligible associate had been allotted before January 1, 2018, the Company allowed eligible associates to keep their unused Sick Leave. In order to distinguish any Sick Leave allotted prior to January 1, 2018, from Sick Leave allotted after January 1, 2018, the Company created a new category of Sick Leave called "Accrued Leave."
> …
> According to the Company's revised policy, Accrued Leave is to be used for purposes consistent with Sick Leave. The revised policy further states that the "Sick Leave policy and eligibility applies to [Accrued Leave]."[36]

---

[34] Rec. Doc. 11-2, p. 2.
[35] Rec. Doc. 17-1, p. 20 (emphasis added).
[36] Rec. Doc. 17-1, p. 3.
56997

Additionally, Spriggs attaches a document from Harrison Finance titled "What Happens to My Pay & Benefits?" which, next to the heading "Sick and Accrued Leave," states that "Sick and/or Accrued Leave are not eligible to be paid upon separation from the company."[37]

Hancock cites *Jackson v. Housing Authority for the Parish of St. James*[38] in support of its position that Spriggs is not entitled to payment for Sick Leave.[39] In *Jackson*, the court found that an employee was not entitled to payments for accrued sick leave following termination because the employer's policy expressly provided that Sick Leave was not payable upon termination. The Louisiana Court of Appeal affirmed the decision and found that, "although the employer's policy allowed unused sick leave to accrue from year to year, the employee was not entitled to payment for unused sick leave upon termination, where the employer's policy manual specifically provided that an employee would not be entitled to pay for unused sick time."[40]

Similarly, the summary judgment evidence demonstrates that Accrued Leave was a subcategory of Sick Leave to account for accrued, but unused, balances of Sick Leave which were accrued prior to Hancock changing its Sick Leave accrual policy effective January 1, 2018. Like *Jackson*, although Hancock's revised policy allowed previously unused sick leave to roll over in to an Accrued Leave category, Hancock's policies expressly provide that Accrued Leave balances are to be treated like Sick Leave which is "not eligible to paid upon separation from the company."[41] Spriggs fails to point to any

---

[37] Rec. Doc. 11-11, p. 1.
[38] 05-665 (La. App. 5 Cir. 3/14/06); 926 So.2d 606.
[39] Rec. Doc. 13-2, pp. 8-9.
[40] *Calamia v. Core Labs.*, LP, 17-635 (La. App. 5 Cir. 5/30/18), 249 So. 3d 1038, 1047.
[41] *Id.*
56997

competent summary judgment evidence that demonstrates a genuine issue of material fact on the issue of his entitlement to sick leave pay. Accordingly, summary judgment shall be granted in favor of Hancock on the sick and accrued leave issue.

   2. *Vacation Pay*

The Court agrees with Hancock that it is unclear whether Spriggs is arguing that he is entitled to Vacation Pay.[42] Spriggs does not claim Vacation Pay in his *Amended Complaint* but mentions 144 hours of Vacation Pay in his *Memorandum in Support of Summary Judgment*.[43] In that Memorandum, however, Spriggs accounts for the money and hours he is allegedly owed, but that calculation does not include the 144 hours of Vacation Pay in these calculations.[44] Additionally, in Hancock's Statement of Facts, Hancock asserts that Spriggs has been paid for all vacation hours.[45] In response to that assertion, Spriggs replies, "[a]dmitted but not material."[46] Thus, even by Spriggs own admission, he has been paid for all vacation hours. Further, Spriggs failed to address Vacation Pay in his *Opposition* to Hancock's *Motion for Summary Judgment.* Thus, any purported claim for Vacation Pay is deemed abandoned. Summary Judgment shall be granted in favor of Hancock for any Vacation Pay claim.

---

[42] Rec. Doc. 17, p. 1, n. 2.
[43] *Id.* at p. 3.
[44] Rec. Doc. 11-2, p. 3.
[45] Rec. Doc. 13-1, ¶13.
[46] Rec. Doc. 18-1, ¶13.
56997

## III. CONCLUSION

For the foregoing reasons, Hancock's *Motion for Summary Judgment*[47] is GRANTED. Plaintiff's *Motion for Summary Judgment*[48] is DENIED. Plaintiff's claims are dismissed with prejudice.

*Judgement* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on September 20, 2019.

                                                     */s/ Shelly D. Dick*
                                        **CHIEF JUDGE SHELLY D. DICK**
                                        **UNITED STATES DISTRICT COURT**
                                        **MIDDLE DISTRICT OF LOUISIANA**

---

[47] Rec. Doc. 13.
[48] Rec. Doc. 11.
56997